UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- against -

SHAO JUN GUO,

Defendant.

19 Cr. 0039 (JMF)

# PRESENTENCING MEMORANDUM ON
# BEHALF OF DEFENDANT SHAO JUN GUO

Bennett M. Epstein, Esq.
Sarah M. Sacks, Esq.
100 Lafayette Street, Suite 502
New York, NY 10013

# EPSTEIN SACKS PLLC

ATTORNEYS AT LAW

100 LAFAYETTE STREET • SUITE 502

NEW YORK, N.Y. 10013

(212) 684-1230

FAX (212) 571-5507

BENNETT M. EPSTEIN, ESQ.
SARAH M. SACKS, ESQ.

October 15, 2019

Hon. Jesse M. Furman
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007
**Filed by ECF**

Re: *United States v. Shao Jun Guo*
19 Cr. 0039 (JMF)

Dear Judge Furman:

We represent the defendant, Shao Jun Guo, pursuant to the Criminal Justice Act. He is scheduled to be sentenced by the Court on October 29, 2019. We respectfully submit this letter and the attached letters from the defendant and his family as our presentencing memorandum. We are also submitting via email to Chambers a brief sentencing video made by counsel during a visit to the defendant's home, which we believe conveys his personal humility, modest circumstances and family closeness in a way that is difficult to convey with mere writing. For the reasons stated below, and as is supported by the written and video submissions, we respectfully submit that a sentence of probation, including a significant term of home incarceration and/or other non-custodial conditions as set forth in U.S.S.G. §5B1.3(e), is one that is "sufficient but not greater than necessary" to serve the purposes of sentencing under 18 U.S.C. §3553(a). It would also be adequate punishment for someone like Shao Jun who poses no threat to the community, who we submit would not benefit from traditional imprisonment, and whose wife and young child would suffer the most if he was to be incarcerated for any period of time.

Several factors support this conclusion. Among them are substantial mitigating circumstances, found in the sacrifices Shao Jun made to support his family in China so that his siblings could receive their education, and sacrifices which continued so that his parents and siblings could come to the United States while he stayed behind in China and cared for his aging and disabled grandmother. These selfless deeds are not only a testimony to his own character, but they also left Shao Jun severely disadvantaged to earn a decent living when, a decade later, he was finally able to join his family in the U.S. Another factor supporting such a sentence is that the

1

guidelines level in this case is based upon what we submit is an inflated and fictitious loss amount, and therefore severely overstates the punishment that is commensurate with Shao Jun's culpability.

When the Court considers "the history and characteristics of the defendant" under Section 3553(a)(1), we submit that Shao Jun's humility, selflessness and what he has done throughout his lifetime for the benefit of his family speaks volumes. As described in the Presentence Investigation Report (the "PSR"), and explained by the defendant and his family in their letters and video, Shao Jun elected to forego his own education and put his own life on hold for years on end so that he could work in various factories far from home to send virtually all his income home to support his family financially while his younger siblings remained in school. Then, after his family immigrated to the United States without him (by the time their visas were approved, Shao Jun was over the age limit to come with his parents), he stayed in China and continued to put his own life on hold. He supported his elderly grandmother, and then cared for her full time during her final years. He also remained single, and did not marry, as he waited until he was granted a visa to come to the United States to join his parents and siblings, which he finally did 10 years later. It was only thereafter, once Shao Jun was reunited with his family and settled here in the United States, that he was able to start a family and life of his own.

## I. Shao Jun's Unique Personal History Supports Mitigation in This Case

Shao Jun's personal history, which includes him making significant personal sacrifices for the benefit of his family, does more than show his strong character. It also helps explain how he came to engage in selling untaxed cigarettes, for which he is about to be sentenced by Your Honor.

### A. Shao Jun's Early Life: A Hard-Working, Close-Knit But Poor Family Living Together in Rural China

Shao Jun was born on November 8, 1972 in Dabu County, a poor rural area in the Guangdong Province in China. He was the oldest of three children born to Qiang Feng Kwok and Qiu Fang Huang. His sister Shao Dan Kwok and his brother Shao Don Kwok are approximately two and six years younger than him, respectively.[1]

As described by the family and in the PSR, both parents were factory workers who worked hard to provide basic essentials for their family. They lived in a modest home with no running water and barely any electricity, which was available, but they could not afford it. While Shao Jun's parents worked long hours, and sometimes needed to live away from home and each other, their paternal grandmother, Dang Ying Wen, looked after the children. In turn, the children helped look after their grandmother, who had an illness that affected her legs and left her unable to walk.

Although they lived very modestly, Shao Jun describes his childhood as a happy one. He was very close with his parents, his brother and sister and his grandmother. When they were at home, they all lived under one roof and they all contributed to the household, whether it was through the parents working to earn money or the children gathering water at the well, doing the

---

[1] Although their last names are spelled differently in English, in Chinese all three siblings and their father share the same surname. The different spellings of their last names is a side effect of the different times they immigrated to the United States.

2

laundry and cooking family meals over an open flame. Although there were no "extras" as is described in the PSR, the family was happy to have each other.

### B. Shao Jun Left School to Work to Support His Family

Shao Jun dropped out of school when he was 17 years old, which has been described to us as the equivalent of finishing only middle school in China. At the time, his family did not have enough money to continue to pay for school for him (there was no free education in their area at the time) and they needed Shao Jun to work in order to have enough money to continue to send Shao Jun's two younger siblings to school. It was at this time that Shao Jun left home and went to work (and live) at a factory, hours away from home.

Over the next approximately 10 years, Shao Jun worked at two different ceramics factories where he performed hard manual labor. He worked six days a week, approximately 14 hours a day, and lived onsite at the factories in the dormitory. As Shao Jun's family describes it, he was making only approximately $70 to $120 per month, "lived a frugal life" and sent practically every penny he earned home – first to his parents and siblings and then, once his family left China, to his grandmother.

### C. Shao Jun Was Left Behind When His Family Immigrated to The United States

In 1995, Shao Jun's family learned that they had been granted visas to immigrate to the United States. A relative had applied for these visas on the family's behalf in 1985, 10 years earlier. Since Shao Jun was 22 years old when the visas finally came through, he was no longer eligible to immigrate with his parents. While his parents and siblings came to seek a better life in the United States, Shao Jun was required to remain in China.

After his family came to the United States, Shao Jun's parents put in a visa application for him so that he could eventually immigrate to the United States and join them. However, he would ultimately wait another 10 years for this application to be granted. During this time, Shao Jun had to put his own life on hold: while his brother and sister would continue their education and get married and have their own families in the United States, Shao Jun refrained from making any such ties or roots in China so as not to thwart his efforts to obtain a visa and reunite with his family. If Shao Jun changed his status as a single person, he would have had to start the immigration process all over again.

These next 10 years in China were exceedingly difficult for him. He continued to work at a factory. While his grandmother was still alive, he sent almost all of his earnings to her. With the rest of his family in the United States, he was the primary support and caregiver for his grandmother. She remained unable to walk and bound to a wheelchair. For the final years of her life, Shao Jun lived with his grandmother so that he could care for her full time. She passed away when she was 92 years old.

### D. When Shao Jun Finally Reunited With His Family in The United States 10 Years Later, he Struggled to Make a Life For Himself and Then to Support His New Wife and Young Daughter

On October 7, 2005, 10 years after his family left China, Shao Jun was finally allowed to immigrate to the United States. By this time, Shao Jun was in his early 30s and he struggled to adapt to his new life. He did not speak the language, he had only a middle school education, and he did not have the benefit of being educated here (both his siblings continued their education in the U.S.). He rented a room with other new Chinese immigrants in an apartment in Chinatown and worked multiple jobs wherever he could find work. He mostly worked in construction (as did his brother and father) but he suffers from arthritis (probably as a result of years of manual labor) which made this challenging. Also, finding the work itself was inconsistent.

In 2014, Shao Jun was introduced by friends to Xiu Hua Fang, who lived in Tao Bao County, also in the Guangdong Province in China. They married that same year. Shao Jun was 42 years old, considerably older than is typical in his culture to get married. After they were married, Shao Jun still had to wait almost two years for his new wife to join him in the United States. Xiu Hua arrived in 2016. On January 31, 2018, their daughter, ███████, was born. After putting his life on hold for so many years while he waited to be reunited with his family, finally having a family of his own had extra special meaning for Shao Jun and his parents and siblings who knew the sacrifices Shao Jun had made and wanted this happiness for him.

As happy as he was to have his own family, at the age of 45, Shao Jun struggled to provide for his wife and young daughter. They moved into the third-floor apartment in his brother's home in Brooklyn, but he still needed to pay $1,200 a month in rent, put food on the table and pay for other living expenses. Shao Jun, who is a smoker himself, had sometimes helped his co-workers buy Chinese cigarettes, which is how he came into contact with someone who told him how he could sell untaxed Chinese cigarettes as a side job. This contact introduced him to a source located in China, who provided him with addresses around New York City to which boxes of cigarettes would be sent for him to pick up and distribute. Shao Jun would pick up the boxes, break them down, and drive the cigarettes in his van to customers that were mostly small retailers. The work was laborious and the money he made was inconsistent, amounting to at the most a few thousand dollars a month. He knew what he was doing was wrong, but in his mind, he was only providing a less expensive product to people like him who were smokers and were going to buy cigarettes no matter what they cost. It was not until his arrest in this case that he recognized the real harm involved, not only to the state for its revenue, but also for the promotion of the unhealthy smoking habit.

### E. Life Since His Arrest Has Been Difficult for Shao Jun and His Entire Family

Shao Jun's arrest has affected his entire family. His parents are elderly, and his father, in particular, is not well. Shao Jun struggled financially before his arrest, and understandably this has only gotten worse. With Shao Jun at home due to his bail conditions, the roles have reversed and his wife, Xiu Hua, has had to seek work while Shao Jun takes care of ███████, their young daughter, who is 19 months old and is not yet in school. She is his greatest joy. Xiu Hua works as a home health aide, and fortuitously the agency she works for has currently assigned her to help care for her in-laws, who live in the downstairs apartment of Shao Jun's brother's house.

Xiu Hua, who is still new to this country, does not speak English, and as a result also has a limited capacity to earn a substantial living. She is obviously very concerned about what will happen to her and ▆▆▆ if Shao Jun is incarcerated. They also fear the possibility that Shao Jun will be deported as a result of his conviction (he is only a green card holder). After all the sacrifices Shao Jun has made that benefited his parents and his siblings, his family cannot help but feel a large responsibility for what has happened. They remain willing to help and support Shao Jun in any way they can. However, with his parents in poor health and with the siblings' own obligations and responsibilities (Shao Jun's brother and sister both work full time and have their own families, with four and three children, respectively), there is a limit as to what they can do.

## II. The Guidelines Significantly Overstate The Punishment That is Commensurate With Shao Jun's Culpability

In addition to the other mitigating factors described herein, the loss amount in this case, which is based on an estimate of the state and local taxes on the amount of cigarettes attributed to Shao Jun, taxes which can euphemistically be described as "steep" even when applied to domestic brands, which these were surely not, severely overstates the punishment commensurate with his culpability. Courts in this Circuit and beyond have criticized using the Sentencing Guidelines' loss enhancement as a proxy for determining the seriousness of the crime and the appropriate sentence. The Guidelines' loss enhancement was developed "without the benefit of empirical study of actual fraud sentences by the Sentencing Commission." *United States v. Corsey*, 723 F.3d 366, 380 (2d Cir. 2013) (Underhill, J. concurring); *see also United States v. Musgrave*, 647 F. App'x 529, 538–39 (6th Cir. May 4, 2016) ("there is reason to believe that, because the loss Guidelines were not developed using an empirical approach based on data about past sentencing practices, it is particularly appropriate for variances").

Even though the loss enhancement lacks an empirical basis, and because loss amount often plays a disproportionate role in determining the Guidelines sentence, focusing on merely the Guidelines "discourage[es] [sentencing judges] from undertaking close examination of the circumstances of the offense and the background and characteristics of the offender." *Corsey*, 723 F.3d at 380. When used as a proxy for sentencing, Guidelines driven by the loss amount can result in an "utter travesty of justice." *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006) (Rakoff, J.) ("What this exposed, more broadly, was the utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense.") *aff'd mem.*, 301 Fed.Appx. 93 (2d Cir. 2008).

One way to overcome this shortcoming is for judges to place more weight "on the section 3553(a) factors other than the Guidelines." *Corsey*, 723 F.3d at 380; *see also Adelson*, 441 F. Supp. 2d at 514 (stressing the need to rely more heavily on section 3533(a) factors where loss significantly increases guidelines range). A majority of district courts appear to agree with this approach, imposing sentences "outside recommended guideline ranges more often than they do within" when presented with fraud cases. *See Statement of Michael Caruso, Federal Public Defender S.D. Fla., before the U.S. Sent'g Comm'n Pub. Hear'g on Econ. Crime and Inflationary Adjustments* at 4 (Mar. 12, 2015).

5

We respectfully submit that the loss amount calculation used to the determine the guidelines here is especially arbitrary and even less of an appropriate proxy in a case like this where it is derived from an estimate of unpaid taxes on cigarettes, which is far from any amount that the defendant profited. Indeed, Shao Jun did not benefit from this conduct to even a tiny fraction of what the loss amount or the Government's restitution and forfeiture calculations suggest. There is also no "gang" activity or organized profiteering associated with this case. To the contrary, Shao Jun struggled to make a living and engaged in this conduct so that he could support his wife and young daughter.

This is not to say that Shao Jun does not see the error in what he did or take responsibility for his actions. Although he is by nature a man of few words, his letter to the Court sincerely expresses his true feelings of remorse. Shao Jun regrets how his conduct has hurt not only his family but has also harmed his community, people like him, who were the consumers of these cigarettes. However, we respectfully submit that imposing a sentence within or anywhere near the guidelines calculation would result in an "utter travesty of justice" (*see Adelson*, 441 F. Supp. 2d at 512) and would not be commensurate with Shao Jun's actual conduct. For these reasons, we respectfully urge the Court to place more weight on the Section 3553(a) factors than on the guidelines. *See Corsey*, 723 F.3d at 380.

### III. Given These Circumstances, A Sentence of Probation With Home Confinement is Significant But Not Greater Than Necessary

Given the circumstances here, we respectfully submit that a non-incarceratory sentence of probation that includes a substantial period of home confinement to which the Court can add other conditions under U.S.S.G. §5B1.3(e), will be sufficient, but not greater than necessary. We ask for such a sentence without minimizing what Shao Jun did. Although he did not appreciate the harm of what he was doing at the time (in his mind, he was only providing cheaper cigarettes to other smokers like him), as is shown by his letter to the Court, he now understands the ramifications of his actions and that he has damaged his community, his family and himself by selling untaxed cigarettes. He is indeed remorseful. But, at almost 47 years old, this is Shao Jun's first felony conviction, and it has served as its own wakeup call. We respectfully submit that the hardship his arrest and conviction has brought to his wife, young daughter and his whole close-knit family, plus Shao Jun's own personal feelings of shame, coupled with a significant period of home confinement and other conditions that the Court deems appropriate, will be enough of a deterrent and punishment in this case.

Under the familiar language of Section 3553(a), the Court is required to tailor a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing and considering, *inter alia*, "the circumstances of the offense and the history and characteristics of the defendant" and "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." We believe that a sentence of probation with home confinement is such a sentence, and would allow Shao Jun's wife to continue to work and be the primary source of income, while he continues to care for their toddler, and while they wait to learn whether he will be ultimately be deported.

Very truly yours,

*Bennett M. Epstein*
*Sarah M. Sacks*